**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**RICHARD P. LANDERS,**

Plaintiff,

v.

**NATIONAL RAILROAD PASSENGER CORPORATION,**

Defendant.

Civil No. 00-2233 (PAM/JGL)

**ORDER**

APPEARANCES

Charles Friedman, Esq., on behalf of Plaintiff.

David Duddleston, Esq., and Natalie Wyatt Brown, Esq., on behalf of Defendant.

A hearing was held on August 7, 2001, before United States Magistrate Judge Jonathan Lebedoff on Defendant's Motion for Protective Order and to Compel Production of Documents (Doc. No. 12). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. FACTS

In this case, Plaintiff is suing his former employer for wrongful termination. Plaintiff worked for the National Railroad Passenger Corporation ("Amtrak") for over twenty years and was terminated under a 1999 company policy that cut ten percent of employee-managers based on a performance review system which was implemented that year. Plaintiff claims his

AUG 14 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

termination violated the Minnesota Human Rights Act and constituted a breach of contract. Plaintiff also claims that statements in his final performance review were defamatory.

On January 18, 2001, Defendant served Plaintiff with its first set of document requests. On April 12, 2001 Plaintiff served his responses. Defendant noted deficiencies in Plaintiff's responses and notified Plaintiff many times to try to resolve the dispute. Plaintiff argues that Defendant does not need some of the documents in question and that he has been unable to locate other documents.

On April ll, 2001 Plaintiff served Defendant with Plaintiff's First Notice of Taking Depositions. Among the noticed depositions was the deposition of George Warrington, Amtrak's President and CEO. Defendant seeks a protective order to vacate the notice of deposition of Mr. Warrington. Defendant argues that Mr. Warrington has no personal knowledge of Plaintiff or the facts surrounding his termination and that there are other employees, available for deposition, who could provide the requested information. Plaintiff argues that the new performance review policy was Mr. Warrington's idea and therefore, his "thought processes" regarding the review policy are relevant to this case.

## II. DISCUSSION

At the motion hearing, the parties indicated that Document Request No. 11 is the only request still at issue. Therefore, this order will

address Defendant's Motion for Discovery only as it pertains to Request No. 11. The Court will also address Defendant's Motion for Protective Order, which Plaintiff opposes.

### A. Defendant's Motion for Discovery

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). The information sought need only be "relevant to the claim or defense of any party" or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Limited only by the broad scope of Rule 26(b), a party has the right to request any information within the "possession, custody, or control" of the party being served. Fed. R. Civ. P. 34(a). Requests for the production of documents is allowed under the Federal Rules. See Fed. R. Civ. P. 26(a)(5). If a party objects to a document request, the party must state the reason for the objection. See Fed. R. Civ. P. 34(b).

Defendant's Document Request No. 11 seeks "[p]laintiff's federal and state income tax returns, including w-2 forms, any and all schedules and attachments for the period from January 1995 to the present, and any amendments, notices, audits, or penalties related thereto." Defendant argues that this information is relevant to the issue of Plaintiff's damages. Plaintiff claims that as a result of his termination, he experienced "near financial disaster," lost his house, and was forced to move to Chicago. Tax returns,

Defendant argues, will demonstrate whether or not Plaintiff had other income that mitigated Plaintiff's alleged financial losses. Plaintiff does not rebut these arguments, but has refused to sign a "release of tax forms" document. Plaintiff asserts that he has produced all 1099 and W2 forms related to any employment subsequent to his Amtrak termination.

Tax returns are privileged documents, but they do not enjoy an absolute privilege from discovery. See St. Regis Paper Co. v. United States, 368 U.S. 208, 218-19 (1961). Where a party places its financial condition into dispute, tax returns may contain relevant information. See Farmers & Merch. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997); Eastern Auto Distrib., Inc. v. Peugeot Motors of Am., Inc., 96 F.R.D. 147, 149 (E.D. Va. 1982) (stating that incomc tax rcturns "may be the best source of complete and competent information as to [a] party's income."). Courts in other jurisdictions have formulated a rule to determine whether tax returns should be disclosed in discovery. Under the test, a court must determine whether (1) the tax returns are relevant to the subject matter in dispute, and (2) a compelling need exists for the returns because the information sought is not obtainable from other sources. See Terwilliger v. York Int'l Corp., 176 F.R.D. 214, 216-17 (W.D. Va. 1997) (citations omitted); Fort Washington Resources, Inc. v. Tannen, 153 F.R.D. 78, 80 (E.D. Pa. 1994); Smith v. CSX Transp., Inc., No. 93-373-CIV-5-F, 1994 WL 762208, at *1 (E.D.N.C. May 18, 1994); United States v. Bonanno Organized Crime

Family of La Cosa Nostra, 119 F.R.D. 625, 627 (E.D.N.Y. 1988). The party seeking discovery bears the burden of establishing relevance, and the objecting party must identify an alternative source for the information. See Terwilliger, 176 F.R.D. at 216-17 (citations omitted); Bonanno, 119 F.R.D. at 627. The Court finds the balancing test enunciated above appropriate to decide the discovery issue at hand.

Regarding the first prong of the balancing test, Defendant argues that information contained in Plaintiff's tax returns may have a bearing on two of the "claims or defenses" in this case: (1) whether Plaintiff suffered the financial "disaster" he claims, and (2) to what extent Plaintiff was employed elsewhere at the same time as he was employed at Amtrak. Defendant argues that one of the reasons Plaintiff was terminated was that he was not "around" as much as his job required. Defendant posits that Plaintiff may have been working at a second job when he should have been working at Amtrak.

The Court agrees with Defendant that Plaintiff's tax returns are relevant to the subject matter of this case for two reasons. First, Plaintiff has put his financial condition and income at issue. Where a party places its financial condition into dispute, tax returns may contain relevant information. See Farmers & Merchants Nat'l Bank, 174 F.R.D. at 585; Eastern Auto Distrib., Inc., 96 F.R.D. at 149. Second, the issue of job performance is at the heart of this litigation. Defendant has a right to explore

all reasonable defenses relating to Plaintiff's claims and the tax returns are an obvious way to locate information regarding Plaintiff's alleged "moonlighting."

Turning to the second prong of the test, Plaintiff submits that he has provided much of the requested information in other forms. Specifically, Plaintiff asserts that he has provided W-2's and 1099's for work performed since his termination. Plaintiff also argues that Defendant has Plaintiff's earnings records from his Amtrak employment, information that should suffice for the years Plaintiff was employed by Defendant. Plaintiff has not identified any other sources from which Defendant can obtain the requested information. Defendant maintains that Plaintiff's "post-employment" submissions are inadequate since they do not relate to his period of employment with Amtrak and that Amtrak's records do not contain any earnings information related to alleged other employment. In addition, Defendant states that, contrary to Plaintiff's assertion, it has not received any of Plaintiff's 1099's for "post-termination" work.

The Court finds that Plaintiff has not satisfied his burden to prevent discovery of the tax returns and, therefore, a sufficiently compelling need for disclosure still exists. The tax returns and 1099's are in the "possession" of Plaintiff and are "reasonably calculated to lead to admissible evidence" and Plaintiff must provide them. See Fed. R. Civ. P. 34(a), 26(b)(1); Volk v. Paramount Pictures, Inc., 19 F.R.D. 103, 104-105 (D. Minn. 1950). Plaintiff is ordered to fully respond to Defendant's Document Request No. 11.

**B. Defendant's Motion for Protective Order**

Rule 26(c) governs protective orders and provides: "Upon motion by a party or by a person from whom discovery is sought, . . . for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). A protective order is appropriate to limit the scope of discovery or disclosures and may order that discovery not be had on certain issues. See Fed. R. Civ. P. 26(c)(4). A court has broad discretion in determining whether a protective order is warranted and the appropriate degree of protection. See May Coating Techs., Inc. v. Illinois Tool Works, 157.F.R.D. 55, 57 (D. Minn. 1994) (citations omitted).

The party seeking a protective order bears the burden of showing "good cause" for the order, in accordance with Rule 26(c) of the Federal Rules of Civil Procedure. See General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir. 1973)); Rolscreen v. Pella Prods. of St. Louis, Inc., 145 F.R.D. 92, 96 (S.D. Iowa 1992) (citing Iowa Beef Processors, Inc. v. Bagley, 601 F.2d 949, 954 n.5 (8th Cir. 1979)). Defendants must make a "specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." Rolscreen, 145 F.R.D. at 96 (citations omitted). This requirement "furthers the goal that the Court only grant as

narrow a protective order as is necessary under the facts." Id. (citation omitted). District courts may quash a deposition notice if it "subjects a person to undue burden." Miscellaneous Doc. Matter #1, Appellees v. Miscellaneous Doc. Matter #2, Appellants, 197 F.3d 922, 925 (1999) (8th Cir. 1999) (quoting Fed. R. Civ. P. 45(c)). "[E]ven if relevant," depositions are not permitted "where no need is shown." See id. (citation omitted).

In the present case, Defendant seeks a protective order vacating the deposition notice of Amtrak's President and CEO, George Warrington. Defendant argues that Mr. Warrington has no information relevant to this case since Mr. Warrington neither knows Plaintiff nor was involved in Plaintiff's termination. Therefore, Defendant argues, deposing Mr. Warrington would cause unwarranted harassment and abuse. In addition, Defendant asserts that it has provided Plaintiff the names of six other managers with superior knowledge of Plaintiff's case, all of whom are available for depositions. Plaintiff responds that Mr. Warrington created the employee review policy under which Plaintiff was terminated and, therefore, his "thought processes" regarding the policy are relevant to the instant case.

Courts have vacated deposition notices of high-ranking company executives when the executives had no personal knowledge of the facts of the case. See Salter v. Upjohn Co., 593 F.2d 649, 650 (5th Cir. 1979); Lewelling v. Farmers Ins., 879 F.2d 212, 218 (6th Cir. 1989); Thomas v. Int'l Bus. Mach., 48 F.3d 478, 483 (10 Cir. 1995). The courts have reasoned that it

may be futile to depose an executive who has no knowledge of the case when there are other people available who have the needed information. See id.

When the District of Iowa addressed this issue, the court reasoned that it was necessary for the party seeking to depose a company president to depose other individuals whom the opposing party claimed had superior knowledge of the issues before deposing the president. See Rolscreen, 145 F.R.D. at 97. The court reasoned that so doing would avoid any duplicative discovery and protect the president's time. See id. at 98. The Court finds this reasoning an appropriate response to the issue of deposing executives who have little or no knowledge of a case at hand.

In Rolscreen, there was evidence that the company president played an active role in terminating the dealership agreement at issue, including approving the termination notice. See id. at 93, 96-98. In fact, the president admitted to approving the termination notice. See id. at 97. Plaintiff offers no such evidence in this case, beyond assertions that the employee review policy was Mr. Warrington's idea and that Mr. Warrington possesses "unique, superior personal knowledge of the facts in the case." Plaintiff cites no case law allowing deposition of a company executive based on such bare facts and assertions.

The Court finds that Amtrak has demonstrated that good cause exists for vacating the deposition notice of Mr. Warrington. Mr. Warrington has no personal knowledge of the Plaintiff or the facts surrounding his

termination. The fact that, in his position as president, Mr. Warrington announced the new employee review policy is unavailing. The role of company president is oftentimes part ceremonial and merely announcing the implementation of a new company policy does not mean that Mr. Warrington was responsible for the policy either at its inception or once it was in place. In addition, even if Mr. Warrington supported the employee review policy at its commencement, Plaintiff offers no evidence regarding how that alleged knowledge can be imputed to Plaintiff's termination. Mr. Warrington has never met Plaintiff and has no personal knowledge of Plaintiff. The only contact between the two individuals cited by Plaintiff is a letter Plaintiff wrote to Mr. Warrington. Mr. Warrington never saw or read the letter. The letter was passed on to another employee for action. Defendants have provided Plaintiff with the names of six other employees whom they assert have superior knowledge to Mr. Warrington regarding the issues in the present case. Apparently, Plaintiff has declined to take the depositions of any of them. Without taking the depositions of those six individuals, Plaintiff's request to take the deposition of Mr. Warrington is premature, at best. These people are closer to the issues and, according to Defendant, have the relevant information. As Defendant points out in its memorandum, presidents and CEOs are "singularly unique and important individual[s]" who must be "protected" from "unwarranted harassment and abuse." (Mem. of Law Supp.

Def. Mot. For Protective Order at 10) (quoting Mulvey v. Chrysler Corp., 106 F.R.D. 364, 366 (D.R.I. 1985).)

Therefore, the Court finds that Defendant has provided the "specific demonstration of facts" necessary to grant the motion. See Rolscreen, 145 F.R.D. at 96. Defendant has met its burden by demonstrating "good cause" exists to grant the protective order because it would be overly burdensome for Mr. Warrington to take half a day away from his duties as president and CEO of Amtrak to attend a deposition regarding a case he knows nothing about.

Furthermore, Plaintiff has failed to demonstrate the relevance of, or "need for," Mr. Warrington's proposed testimony. See Miscellaneous Doc. Matter #1, 197 F.3d at 925. Plaintiff must exhaust the discovery options offered by Defendant, namely disposing the six other managers who have knowledge of the employee review policy and Plaintiff's termination, before he can attempt to demonstrate the requisite "need" to depose Mr. Warrington. The Court acknowledges that there may be occasions when high level executives should be deposed. See Rolscreen, 145 F.R.D. at 96. This is not one of those occasions. Accordingly, this part of Defendant's motion is granted.

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Defendant's Motion for Protective Order and to Compel Production of Documents (Doc. No. 12) is **GRANTED**; and

(2) Plaintiff must comply with this Order and respond to Defendant's discovery requests within thirty days of this Order.

Dated: August 14, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
OFFICE OF THE CLERK

316 N. ROBERT ST., RM. 700
ST. PAUL, MN 55101

300 S. FOURTH ST., RM 202
MINNEAPOLIS, MN 55415

417 FEDERAL BLDG, 515 W. FIRST ST.
DULUTH, MN 55802

# Clerk's Notice In Re: Protective Order

A Protective/Confidentiality Order has been entered in this action. You must comply with the guidelines set forth below when filing **confidential original** documents with the Clerk of U.S. District Court. Failure to do so will cause the documents to be returned.

*Guidelines for filing with the Clerk:*

A. Documents are to be **sealed** (closed, fastened, taped, or otherwise secured) in an envelope of comparable size no larger than 9 by 12 *(LR5.1 All pleadings, motions, and other papers presented for filing shall be on 8 1/2 x 11 inch white paper...flat and unfolded. this rule does not apply to (1) exhibits submitted for filing; and, (2) documents filed in removed actions prior to removal from the state courts.)*

B. Each envelope must list the following information, and each document is to be in a separate envelope.

- Action/case number
- Brief action/case title
- Party, name, and complete title of document (i.e. Deft. Johnson's Motion for Dismissal) must be noted on each envelope. Motions, affidavits and memorandums are considered three separate documents.
- The word "**SEALED**" or "**CONFIDENTIAL**"

***Guidelines for filing with a U.S. District Judge or Magistrate Judge:***

In addition to the above procedures, copies for delivery to the U.S. District Judge or U.S. Magistrate Judge are to be marked accordingly and bound together as a set.